**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COMET ENTERPRISES LTD.; COMET
ENTERPRISE LTD.,
<u>Plaintiffs-Appellants,</u>

v.

AIR-A-PLANE CORPORATION,
<u>Defendant-Appellee.</u>

No. 96-1606

UNITED STATES OF AMERICA,
<u>Amicus Curiae.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CA-95-926)

Argued: September 29, 1997

Decided: November 10, 1997

Before RUSSELL, NIEMEYER, and MOTZ, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Russell and Judge Niemeyer joined.

_____

**COUNSEL**

**ARGUED:** Philip Norton Davey, DAVEY ASSOCIATES, P.C., Nor-
folk, Virginia, for Appellants. Sushma Soni, Appellate Staff, Civil
Division, UNITED STATES DEPARTMENT OF JUSTICE, Wash-
ington, D.C., for Amicus Curiae. Robert Eugene Brown, HOWELL,

DAUGHERTY & BROWN, Norfolk, Virginia, for Appellee. **ON BRIEF:** Ruth E. Hansell, DAVEY ASSOCIATES, P.C., Norfolk, Virginia, for Appellants. Frank W. Hunger, Assistant Attorney General, Helen F. Fahey, United States Attorney, Douglas N. Letter, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; William B. Hoffman, Chief Counsel, Barbara C. Hammerle, Senior Counsel (Litigation), Office of the Chief Counsel, Office of Foreign Assets Control, DEPARTMENT OF THE TREASURY, Washington, D.C., for Amicus Curiae.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Two related companies -- one incorporated in Great Britain, the other in Iran -- brought this action to obtain commissions on sales a Virginia corporation had made to an entity controlled by the Government of Iran. The district court dismissed the action. The court found it lacked subject matter jurisdiction over the Iranian plaintiff because its counsel had failed to procure a license necessary to represent Iranian entities. Alternatively, on the basis of an Executive Order that prohibits certain transactions between entities organized under the laws of the United States and those controlled by the Government of Iran, the court concluded that both plaintiffs had failed to state a claim upon which relief could be granted. Because we conclude that the licensing requirement does not divest the district court of jurisdiction and the Executive Order does not necessarily preclude the claims filed in the complaint, we reverse and remand for further proceedings.

I.

The factual assertions that follow are based on the allegations in the complaint. On July 19, 1991, Air-A-Plane Corporation and Comet Enterprises Ltd. ("Comet UK") entered into a contract, in which Air-A-Plane made Comet UK its exclusive sales representative for aircraft equipment (including air conditioners) and spare parts in the Islamic Republic of Iran. The contract obligated Air-A-Plane to pay sales commissions to Comet UK on the sale of Air-A-Plane's equipment ordered by customers within Iran.

2

Pursuant to this contract, Comet UK negotiated, on Air-A-Plane's behalf, with the airline of the Islamic Republic of Iran ("Iran Air") to purchase a substantial amount of Air-A-Plane equipment. In December 1992 and January 1993, Iran Air paid Air-A-Plane almost $1.5 million for this equipment. Commissions on these sales of more than $200,000 became due to Comet UK in February 1993. Air-A-Plane failed to pay Comet UK any of these commissions. On April 11, 1995, Comet UK and Comet Enterprise Ltd. ("Comet Iran"), an Iranian corporation under common management and control, executed a deed of compromise under which Comet Iran became the beneficiary of any future payments from any Comet UK principal, including Air-A-Plane. (Hereafter, the two related companies are collectively denominated "Comet.").

In 1995, Comet obtained additional orders from Iran Air for Air-A-Plane air conditioning units and separate parts. By June 1995, Iran Air had paid to Air-A-Plane more than $500,000 for this equipment; Comet's commissions of more than $82,500 became due in July 1995. Air-A-Plane again failed to pay Comet any of the commissions due on these subsequent sales.

On May 6, 1995, pursuant to the International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq . (1977), President Clinton issued Executive Order No. 12959 prohibiting certain transactions with the Government of Iran. The Executive Order states in pertinent part:

> Section 1. The following are prohibited, except to the extent provided in regulations, orders, directives, or licenses that may be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order:
>
> . . . .
>
> (d) . . . any transaction, including the purchase, sale, transportation, swap, financing, or brokering transactions, by a United States person, relating to goods or services of Iranian origin or owned or controlled by the Government of Iran . . .

3

. . . .

> Section 8(a).This order is effective at 12:01 a.m., eastern
> daylight time, on May 7, 1995, except that . . . (ii) letters of
> credit and other financing agreements with respect to exist-
> ing trade contracts may be performed pursuant to their terms
> with respect to underlying trade transactions occurring prior
> to 12:01 a.m., eastern daylight time, on June 6, 1995.

Exec. Order No. 12959 (1995). The Office of Foreign Assets Control
("OFAC") promulgated implementing regulations that define Govern-
ment of Iran to include any "entity controlled by" it. 31 C.F.R.
§ 560.304(a) and (b) (1996). The regulations also require legal coun-
sel to procure a license in order to represent "a person in Iran," includ-
ing Iranian corporations, in certain transactions. Id. § 560.525(b) and
§ 560.305.

Seeking to collect the commissions, Comet UK and Comet Iran
filed this action in federal court against Air-A-Plane on September 14,
1995. Air-A-Plane moved to dismiss the action pursuant to Rules
12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Air-A-
Plane contended that the court did not have jurisdiction over Comet
Iran because Comet Iran's counsel had not obtained a license to pro-
vide legal services to an Iranian entity as required by 31 C.F.R.
§ 560.525(b). Additionally, Air-A-Plane asserted that Executive
Order 12959 barred performance of its contract with Comet and so
the complaint failed to state a claim.

The district court granted both motions. Initially, the court held that
because the regulations promulgated pursuant to the Executive Order
required counsel to obtain a license in order to provide certain legal
services to an Iranian corporation, and because counsel for Comet
Iran, an Iranian corporation, lacked such a license, the court did not
have jurisdiction over Comet Iran's claim. The court then determined
that even if it had jurisdiction over Comet Iran, it would "dismiss the
action in its entirety" because "obtaining orders from Iran Air consti-
tutes . . . a transaction relating to goods owned or controlled by the
Government of Iran" and payment for such transactions "is barred by
the [Executive] Order."

4

We review de novo dismissals for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. See Cavallo v. Star Enter., 100 F.3d 1150, 1153 (4th Cir. 1996); Tillman v. Resolution Trust Corp., 37 F.3d 1032, 1034 (4th Cir. 1994).

II.

Comet challenges the district court's finding that it lacked subject matter jurisdiction on several grounds.

Noting that the relevant regulations were amended in August 1997, Comet asserts that the 1997 amendments to 31 C.F.R.§ 560.525, which relax the licensing requirement for the provision of legal services to a "person in Iran," apply here. Thus, Comet, and the United States as amicus curiae, argue that under the current regulations, as amended August 4, 1997, the provision of legal services to Comet Iran in connection with this litigation would be permitted.

Comet is correct that, after the district court's ruling, OFAC amended 31 C.F.R. § 560.525(a)(3) and § 560.525(a)(5)(I) to authorize the provision of legal services "to the Government of Iran or to a person in Iran" for the "[i]nitiation and conduct of domestic United States legal, arbitration, or administrative proceedings on behalf of the Government of Iran or a person in Iran . . .[t]o resolve disputes between the Government of Iran or an Iranian national and the United States or a United States national." 62 Fed. Reg. 41851, 41852 (Aug. 4, 1997). Accordingly, the amended regulations would permit the legal representation of Comet Iran in this suit, without the issuance of any license.

The recent amendments, however, do not apply to this case. The regulations expressly specify that amendments do not apply to a "suit or proceeding commenced or pending prior to such amendment." 31 C.F.R. § 560.402 (1996). Thus, we must determine whether the licensing requirement contained in the regulations, applicable at the time Comet Iran filed this suit, deprives this court of jurisdiction.

The district court concluded that the licensing requirement for the provision of legal services was jurisdictional. For this reason, the

5

court held that the failure of Comet Iran's counsel to obtain a license to provide legal services deprived the court of subject matter jurisdiction over Comet Iran. On appeal, Comet, and the United States as amicus curiae, challenge the district court's determination that the licensing requirement is jurisdictional. Alternatively, Comet asserts that if the requirement is jurisdictional it is unconstitutional.

Neither the district court nor Air-A-Plane cite any administrative or judicial precedent to support the conclusion that the licensing requirement is jurisdictional. In fact, although the specific licensing requirement at issue here has never before been interpreted, federal courts have been reluctant to find similar requirements jurisdictional.

For example, when Cuban nationals brought an <u>in personam</u> action against United States nationals for fraud, the Eleventh Circuit held that the relevant OFAC regulation, which imposed a licensing requirement for any person engaged in a "transaction" with Cuba, was not jurisdictional. <u>Dean Witter Reynolds, Inc. v. Fernandez</u>, 741 F.2d 355 (11th Cir. 1984). The court reasoned that the decision by Congress to "empower[ ] the Executive to forbid" certain activities "does not imply that the jurisdiction of the federal courts is dependent upon the issuance of a license by the Treasury Department." <u>Id</u>. at 360 n.16. <u>See also American Airways Charters, Inc. v. Regan</u>, 746 F.2d 865, 868-74 (D.C. Cir. 1984) (failure to obtain license as required by Cuban Assets Control Regulations held not jurisdictional); <u>National Oil Corp. v. Libyan Sun Oil Corp.</u>, 733 F.Supp. 800 (D. Del. 1990) (agency regulations requiring a license to enter judgment held not jurisdictional); <u>National Airmotive v. Government and State of Iran</u>, 499 F.Supp. 401, 405 (D. D.C. 1980) (agency prohibition on the entry of judgments held not jurisdictional).

Moreover, a license requirement, promulgated by an executive agency, that limits federal court jurisdiction would raise serious constitutional concerns. A court is always well advised to construe regulations in a manner that avoids such "serious constitutional questions." <u>NLRB v. Catholic Bishop of Chicago</u>, 440 U.S. 490, 500-01 (1979); <u>see also American Airways Charters</u>, 746 F.2d at 874 (construing licensing requirement "in a manner that not only upholds their constitutionality but also steers clear of uncertainty on that score").

6

Finally, the Government's interpretation of its own regulations also supports our conclusion that the licensing requirement at issue here is not jurisdictional. OFAC, the agency charged with enforcing the regulation containing the licensing requirement, does not assert that the requirement deprives the federal courts of jurisdiction over Comet Iran's claim. Indeed, the United States, in its amicus brief, has specifically informed us that OFAC has "never interpreted its regulation to strip federal courts to hear civil suits brought by private foreign corporations." The Supreme Court has frequently reiterated that an agency's interpretation of its own regulations is entitled to substantial deference. See e.g., Thomas Jefferson University v. Shalala, 512 U.S. 504, 512 (1994); Stinson v. United States, 508 U.S. 36, 45 (1993).

For all of these reasons, we decline to construe the licensing requirement, which has now been repealed, as jurisdictional and hold that the district court erred in doing so. Because we have concluded that the requirement is not jurisdictional, we need not reach the question of its constitutionality.

III.

Alternatively, the district court held that even if it had jurisdiction over Comet Iran it would dismiss the action "in its entirety" for failure to state a claim upon which relief can be granted. The court based this holding on its interpretation of Executive Order No. 12959, and the Order's implementing regulations, 31 C.F.R. § 560. The proper interpretation of these provisions presents an issue of first impression in the federal courts.

The district court concluded that Executive Order No. 12959 prohibited the payment of sales commissions from Air-A-Plane to Comet because that payment would constitute a transaction proscribed by the Order. The Order prohibits "any transaction, including purchase, sale, transportation, swap, financing, or brokering transactions, by a United States person relating to goods or services of Iranian origin or owned or controlled by the Government of Iran." Exec. Order No. 12959 § 1(d). The implementing regulations define "Government of Iran" to include "[a]ny entity owned or controlled directly or indirectly" by the Government of Iran or "any political subdivision, agency, or instrumentality thereof." 31 C.F.R. §§ 560.304(a) and (b). Thus, the district

7

court reasoned that because the contract between Air-A-Plane and Comet relates to goods bought by Iran Air, an entity substantially owned or controlled by the Government of Iran, it falls within the Order's prohibition.

From the face of the complaint, however, it is far from clear that the Executive Order prohibits suit on the claims at issue here. The Order provides an express exception to its general ban "to the extent provided in regulations, orders, directives, or licenses that may be issued pursuant to this order . . ." Id.§ 1. The appellate briefs indicate that Air-A-Plane, itself, sought and obtained a license authorizing the export of parts to Iran Air "and all transactions in connection with performance of the trade contract" after the effective date of the Executive Order. This license may well authorize Comet's suit on the commissions earned on these transactions.*

Air-A-Plane contends that Comet's failure to allege in its complaint, or in its response to Air-A-Plane's motion to dismiss, that its claims are authorized by license precludes Comet from now so asserting. The contention is meritless. The federal rules simply require that a complaint include "`a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Even after a defendant files a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff need

_____

*Even if no license permits Comet's suit, OFAC suggests that the Executive Order may not bar Comet's suit as to the commissions due to Comet in February 1993 on underlying sales completed prior to that date because such sales took place "prior to the effective date of the Executive Order," and the commissions contract constitutes a "financing agreement." The Executive Order prohibits certain transactions with the Iranian government "notwithstanding any contract entered into prior to" the 1995 effective date of the Order. Exec. Order No. 12959 § 1 (emphasis added). However, the Order specifically states that"letters of credit and other financing agreements with respect to existing trade contracts may be performed pursuant to their terms with respect to underlying trade transactions occurring prior to 12:01 a.m., eastern daylight time, on June 6, 1995." Id. § 8(a)(ii). If necessary, on remand, the district court can consider the relationship of these two portions of the Order and their possible applicability to the facts of this case.

8

not come forward with all of the facts supporting its claim for relief. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991). Rather, "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" a court should not dismiss a complaint for failure to state a claim. Conley , 355 U.S. at 46.

We cannot conclude "beyond a reasonable doubt" that Comet "can prove no state of facts" in support of its claims that would entitle it to relief. Conley, 355 U.S. at 46. Accordingly, we hold that the district court also erred, as a matter of law, in dismissing Comet's complaint for failure to state a claim upon which relief can be granted. We reverse and remand this case to the district court for further proceedings consistent with this opinion. We note that the district judge did not have the benefit of OFAC's position in originally ruling on this matter. On remand, the court may wish to request the United States to provide a full explanation of OFAC's views as to the difficult issues presented by Executive Order 12959 and the accompanying regulations.

REVERSED AND REMANDED

9