**Edgar Michael PORTER, Plaintiff,**

v.

**NATIONAL CON–SERV, INC., Defendant.**

**No. Civ.A. JFM–96–4005.**

United States District Court, D. Maryland.

Oct. 5, 1998.

Edgar Michael Porter, Gaithersburg, MD, pro se.

John Marshall, Rockville, MD, for defendant.

## MEMORANDUM

MOTZ, Chief Judge.

Plaintiff, Edgar Michael Porter, has filed suit against defendant National Con-Serv, Inc. ("NCSI"), alleging discrimination in violation of Title VII. Porter claims that he suffered harassment and disparate treatment due to his race and his interracial marriage, and that he was wrongfully terminated because of his race, his marriage, and/or because he had filed interdepartmental complaints with NCSI regarding work issues. NCSI has moved for summary judgment. The motion will be granted.

### I.

In September 1993, Porter began working as a temporary employee in NCSI's warehouse. On October 26, 1993, NCSI offered Porter a full-time position, starting November 5, as an equipment officer in the mail room. His job responsibilities included processing mail and operating the mailroom equipment, in addition to performing miscellaneous duties in and outside the mailroom. On his first evaluation, dated January 24, 1994, Porter received a "satisfactory" rating overall.

In April 1994, Porter requested a pay increase. That increase was granted because increased responsibilities had been assigned to Porter in the spring of 1994, and it took effect on August 11, 1994. In July 1994, NCSI had accepted applications for the position of Assistant Supervisor for Mail Operations. Porter applied for the job, along with two other candidates. NCSI offered the position to McKever Jones, a black male employee who had applied for the position. Jones then became Porter's supervisor.

On August 16, 18 and 19, Jones met with Porter to discuss issues of concern, including the fact that Porter had missed a lot of work and exhausted his leave, had decreased his productivity, had caused distractions among fellow employees and had been insubordinate to Jones. With respect to the decreased productivity, Porter has produced evidence that, during the time period between August and October 1994, the mail processing equipment failed several times. In addition, the second mail equipment operator position was vacant during the entire month of August 1994.

On September 12, 1994, Dennis Van Dusen, the Treasurer and CFO of NCSI, sent Porter a memorandum concerning his refusal to follow Jones's directions and his distracting the other employees in the mailroom. On September 28, 1994, Jones issued Porter a written warning regarding work attendance because, after not working on September 26 and 27, Porter had a negative balance in his leave time. According to Van Dusen, Porter's productivity dropped off significantly in September 1994, and reached an unacceptable level during the first two weeks of October 1994. Porter was approached about his productivity on several occasions, but no permanent improvement took place. Porter's decreased productivity contributed to a backlog in the outgoing mail. In mid-October, Van Dusen received a memorandum from the mail room supervisor stating that Porter's productivity and behavior had worsened. Van Dusen therefore met with Porter on October 20, 1994 to discuss the situation. After October 20, however, in Van Dusen's assessment Porter's behavior and productivity did not improve, and Porter's employment was terminated on October 25.

## II.

■ Porter's claims are based on his allegations that NCSI subjected him to disparate treatment by "denying training, denying job advancement, improperly dis-

ciplining, and creating an adverse and hostile working environment." Porter. Opp. at 6. In order to prevail on those claims, Porter must present a prima facie case of discrimination, including evidence that an adverse employment action was taken against him. *See Hudson v. Joseph B. Fay Co.*, 902 F.Supp. 85, 88 (D.Md.1995). Under Fourth Circuit law, several of the actions he alleges do not rise to the level of "adverse employment actions" for the purposes of Title VII. Adverse employment actions involve "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensation." *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981). Therefore, Porter's claims regarding training and discipline are not actionable under Title VII because they do not involve "ultimate employment decisions."

■ Porter's claim that he was discriminatorily denied job advancement or promotion lacks merit because he cannot meet his burden to demonstrate that he was the better qualified candidate for the position he sought. *See Evans v. Technologies Applications & Servs. Co.*, 80 F.3d 954, 960 (4th Cir.1996). The applicant who was hired for the position, McKever Jones, had more seniority with NCSI than Porter and had other prior relevant experience. Jones, like Porter, is a black male.

■ Finally, Porter has not produced evidence to sustain an independent claim of hostile environment harassment based on his race or his interracial marriage. A prima facie case of hostile environment harassment requires that Porter set forth (1) unwelcome conduct by the defendant, (2) based on his race and/or interracial marriage, (3) that "was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Spicer v. Commonwealth of Virginia Dept. of Corrections*, 66 F.3d 705, 710 (4th Cir.1995) (en banc). In support of his claim, Porter alleges that he was subjected to unsolicited comments regarding his marriage,

which he reported to management. He further alleges that he was physically threatened by a co-worker with a pair of scissors. That co-worker, Wayne James, is also a black male, and there is no evidence that his action was related to Porter's race and/or marriage. *See Hartsell v. Duplex Prod., Inc.,* 123 F.3d 766, 772 (4th Cir.1997) (noting that "only harassment that occurs because of the victim's gender [or race] is actionable."). Therefore, even taken in total, the "unsolicited comments" alleged by Porter do not amount to conduct that is "sufficiently severe or pervasive 'to alter the conditions of the victim's environment and create an abusive working environment.'" *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The standard for proving an abusive work environment is very high. *Cf. Boarman v. Sullivan,* 769 F.Supp. 904, 910 (D.Md.1991) (finding no abusive work environment where a woman's supervisor asked her to close his office door and remove all of her clothing); *Raley v. Board of St. Mary's County Comm'rs,* 752 F.Supp. 1272 (D.Md.1990) (finding no abusive work environment where supervisor offensively touched plaintiff on two occasions, made isolated sexual remarks to plaintiff, and had kissed and touched other women in the office). Therefore, Porter has not put forth a prima facie case that any abusive treatment he allegedly suffered constituted hostile environment discrimination violative of Title VII.

III.

■ In order to prove his discriminatory termination claim, Porter must set forth a prima facie case that "(1) [he] is a member of a protected class; (2)[he] was qualified for [his] job and [his] job performance was satisfactory; (3)[he] was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir.1995). Porter has not established a prima facie case with respect to either the fact that his job performance was satisfactory or the fact that similarly situated employees were retained. To support his allegations that his job performance was satisfactory, he provides the statements of Anthony Neal and Dan Simmons.[1] Neal makes no evaluation of Porter's productivity, but states that he "did not observe that Mr. Porter initiated or caused disruptions in the mailroom," while acknowledging that he and Porter "had only one disagreement" during the two month period they had worked together. Simmons, in a transcript of a telephone interview that appears to have been substantially redacted, states that "CP was a good worker," but also states that "CP was getting into a lot of discrepancies with employees and managers in the mail room." Therefore, the statements of these employees confirm and do not refute several of NCSI's proffered reasons for Porter's termination. Porter's own conclusory allegations that his work was satisfactory are not sufficient to create a genuine issue of material fact.[2] *See*

---

1. The evidence of the statements of Neal and Simmons was not submitted in the form of admissible affidavits. In fact, the evidence of Simmons's statement is especially problematic, because it is merely labeled with the date, the words "Phone Interview" (without reflecting the name of the interviewer), and Simmons's name and job title. Furthermore, the phone interview refers to the party at issue as "CP," and never specifically mentions Porter by name. In order to give Porter's claim a maximum opportunity to survive summary judgment, however, for the purposes of this analysis I will treat the submissions as if they were admissible evidence.

2. The evidence submitted by Porter to establish his productivity does not demonstrate that NCSI's assertion is false. The records of the mailroom equipment maintenance do establish that mechanical difficulties probably contributed to the backlog, however, NCSI acknowledges that the entire backlog is not attributable to Porter's declining productivity. Van Dusen Aff. ¶ 13. Furthermore, the graph submitted by Porter in Exhibit 5 to his opposition is not labeled, and has only handwritten captions entitled "Workdays" and "Mail Volume." Nothing on the graph establishes that it even came from NCSI, and, assuming that it did, its relation to Porter's position and

*Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir.1997).

In addition, however, Porter has not provided evidence that similarly situated employees were retained and not terminated. In his supplemental response, Porter alleges that two similarly situated employees received preferential treatment: Matt Ketzel and Shawn Kennedy. Porter has alleged that Ketzel had problems with his work because he could not operate the equipment, and that equipment representatives and mailroom supervisors would frequently assist Ketzel in processing the mail. He further alleges that Ketzel was never disciplined and left the company on his own accord. Not only has Porter produced no admissible evidence to support those allegations, he has not demonstrated that Ketzel was similarly situated to him with respect to the other reasons given for his termination: poor attendance records, dissention with co-workers and insubordinate behavior. Furthermore, Porter has not produced any evidence to demonstrate that Kennedy was a similarly situated employee. His only allegation about Kennedy is that he was not discharged but left the company on his own accord, and Porter does not provide any evidence or make any allegations regarding Kennedy's job position, performance or disciplinary record.

Furthermore, Title VII does not protect employees from all unfair or un-professional treatment, but only from intentional discrimination on the basis of "certain, discreet classifications." *Rose-Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1109 (8th Cir.1998). "[I]t does not prohibit employment decisions based on other factors, such as job performance, erroneous evaluations, personality conflicts, or even unsound business practices." *Id.* An actionable Title VII claim, therefore, in a case where an employer offers a legitimate nondiscriminatory motive for its decision, requires evidence of pretext. Porter has not met his burden to produce such evidence.[3] Therefore, even if he had established a prima facie case of discrimination, his Title VII discrimination claims would be deficient as a matter of law.[4]

For these reasons, NCSI's motion for summary judgment is granted. A separate order to that effect is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herewith, it is, this 5th day of October, 1998

ORDERED that

Defendant National Con–Serv, Inc.'s motion for summary judgment is granted.

---

productivity is unknown. Finally, the fact that NCSI may not have a document stating production requirements does not necessarily indicate that the management did not expect a certain level of performance and productivity from its employees.

3. Porter contends that inconsistencies between the NCSI employees' affidavits regarding the exhaustion of his leave time on various dates and the leave records indicates that the complaints about his excessive absences were pretextual. However, it is undisputed that Porter exhausted his leave time on September 26 and that on September 27 he took time off for which he had no accumulated leave.

4. Porter also has not established a prima facie case that his termination was retaliation for his various interdepartmental complaints. To do so, he must show a sufficient causal connection existed between his protected activity and his termination. *See Hopkins v. Baltimore Gas And Elec. Co.*, 77 F.3d 745, 754 (4th Cir.1996). Porter alleges that George Mann, President of NCSI, suggested that Porter "filed too many complaints" of disparate treatment and threatened termination if Porter did not "straighten up." This evidence does not create a prima facie case of retaliatory termination, however, because Porter has not produced evidence of the timing of Mann's statement or of Mann's involvement in the decision to terminate him, in order to suggest a causal connection.