Maurice **MATHEWS**, Plaintiff,

v.

**GIANT FOOD, INC., et al., Defendant.**

**No. CIV. JFM–02–542.**

United States District Court,
D. Maryland.

Feb. 20, 2002.

See also, 187 F.Supp.2d 462.

JoAnn Patricia Myles, Law Office, Largo, MD, for Plaintiff.

Robert P. Watkins, Julie Hilden, Kumiki Gibson, Kathleen L. Jennings, Kristin E. Adler, Jeffrey M. Smith, Williams and Connolly, Washington, DC, Mark Scott London, London & Mead, Washington, DC, Claudette V. Ferron, Law Office, Washington, DC, for Defendants.

### OPINION

MOTZ, District Judge.

Plaintiff Maurice Mathews has instituted this action against Giant Food, Inc. ("Gi-

ant")[1] alleging discrimination on the basis of race under Title VII and Section 1981, quantum meruit, discrimination under the Maryland Human Relations Act, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract and wrongful termination.[2] Defendant now moves for summary judgment on all counts. The motion will be granted.

### I.

Mathews began working in Giant's Landover warehouse in 1979. During his employment there, he has been a janitor, selector and forklift operator. During Mathews' tenure, he received occasional notices for violating Giant's attendance policy and absence notification procedure. See Def.'s Ex. 6. Giant allowed each employee two days of emergency personal leave each year to be used in situations where employees needed to take leave on short notice. Giant defined emergency personal leave as "any non-illness or non-injury situation which is determined to be totally beyond [an employee's] control and prevents an employee from meeting [his] work schedule." Def.'s Ex. 5. On March 17, 1995, Mathews used his second emergency personal leave day of the calendar year. See id.

On April 17, 1995, Mathews failed to arrive for an 8:00 a.m. overtime shift for which he had signed up. Mathews did not notify Giant within two hours after the

1. Mathews has also asserted claims against several of Giant's employees. Those defendants are entitled to summary judgment for the reasons stated in the accompanying opinion in *Carson v. Giant Food, Inc.*, JFM–96–2882. That opinion also addresses Mathews' hostile work environment claims under Title VII and section 1981 and state law claims against Giant, in addition to global arguments made by Mathews and other Plaintiffs concerning the early right-to-sue notices issued to them by the Equal Employment Opportunity Commission and the viability of applying the continuing violation doctrine. Thus, this opinion focuses only on Mathews' discriminatory discharge claims under Title VII and section 1981.

2. On August 7, 1997, I dismissed Mathews' claims based on §§ 1985 and 1986, the Equal Pay Act and the ADEA.

start of the shift so his absence was considered unexcused. *See* Giant's Absence Notification Guidelines, Def.'s Ex. 3 ("Failure to notify within two hours after the start of your shift will cause the absence to be considered unexcused."). In accordance with Giant's unexcused absenteeism policy, *see* Def.'s Ex. 4, Mathews was given a written warning which advised him that a second unexcused absence within six months would lead to a three-day suspension without pay. *See* Disciplinary Notice dated April 17, 1995, Def.'s Ex. 7. On July 3, 1995, Mathews again failed to work an overtime shift and did not notify Giant that he would be unable to work the shift. Mathews was suspended for three days for this second unexcused absence. *See* Disciplinary Notice dated July 7, 1995, Def.'s Ex. 8. Finally, on Labor Day weekend, Mathews failed to work an overtime shift for which he had signed up. Mathews was suffering from a severe sinus infection and had become confused. He believed that his shift did not start until 8:00 a.m. when it actually had started at midnight. *See* Mathews' Dep. at 126. He went to the emergency room for treatment at 3:30 a.m. and did not contact Giant until he returned home, approximately seven hours into the shift. *See id.* at 123–127. In accordance with its unexcused absenteeism policy, Giant terminated Mathews.

Mathews filed a grievance through his union and at the grievance hearing, he asked for a "Last Chance Letter." A "Last Chance Letter" is formally known as a Conditional Return to Duty Agreement. It allows an employee that commits a terminable offense to return to duty subject to the provisions of the agreement. *See* Haywood Decl. ¶ 42. Mathews was denied a "Last Chance Letter" and his termi-

nation was effective October 10, 1995. *See* EEOC Charge of Discrimination, Def.'s Ex. 9.

## II.

■ Mathews has asserted Title VII and § 1981 claims of discriminatory discharge. In order to establish a prima facie case of discriminatory discharge, a plaintiff must show that "(1) [he] is a member of a protected class; (2)[he] was qualified for [his] job and [his] job performance was satisfactory; (3)[he] was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Porter v. National Con–Serv, Inc.,* 51 F.Supp.2d 656, 659 (D.Md.1998) (*citing Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir.1995)); *see also Karpel v. Inova Health System Serv.,* 134 F.3d 1222, 1228 (4th Cir.1998). If Mathews establishes a prima facie case, the burden shifts to Giant to advance a legitimate, nondiscriminatory reason for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If Giant successfully proffers such an explanation, the burden returns to the plaintiff to show that the proffered reason is a pretext for impermissible discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Mathews has failed to establish the second and fourth element of the prima facie case of discriminatory discharge. Therefore, summary judgment will be granted on Plaintiffs' Title VII and § 1981 claims.[3]

■ Giant's Absence Notification Guidelines required Mathews to notify Giant that he would miss his shift within two hours of that shift starting. *See* Def.'s Ex.

---

**3.** The analysis and result are identical under Title VII and Section 1981. *See Gairola v. Va. Dep't of Gen. Servs.,* 753 F.2d 1281, 1285 (4th Cir.1985) ("Under Title VII and ... § 1981, the elements of the required prima facie case are the same.").

3. Mathews concedes that he violated this policy on three separate occasions. *See* Mathews' Dep. at 78, 83–84, 87–88, 96, 123–127. Mathews' violation of Giant's policy indicates that his performance was not satisfactory. *See Blair v. Colonnas Shipyard Inc.*, 52 F.Supp.2d 687, 694 (E.D.Va.1999), *aff'd mem.*, 203 F.3d 819 (4th Cir.2000) ("Accordingly, since [employee] violated policies that the [employer] considered 'very important,' he did not perform his job satisfactorily and cannot establish a prima facie case of race discrimination."); *see also Farasat v. Paulikas*, 32 F.Supp.2d 249, 255 (D.Md.1998), *aff'd mem.*, 166 F.3d 1208 (4th Cir.1998) (holding that employee's performance was unsatisfactory in part because he was tardy on a regular basis).

Mathews argues that Giant's policies do not apply to overtime shifts because they are voluntary. *See* Mathews' EEOC Charge Information Form, Def.'s Ex. 9. However, it is consistent and logical for Giant to require employees to follow the same absence notification guidelines for voluntary overtime shifts once the employee has committed to working that shift. In addition, Mathews deposition testimony makes clear that he knew the policy required him to call Giant within two hours of the shift starting even though it was an overtime shift. *See* Mathews' Dep. at 126 (stating that he would have called in within two hours of the beginning of the shift to avoid termination if he had realized that he was scheduled to work). Mathews also complains that Giant would not accept his medical documentation regarding the unexcused absence. *See* Mathews' EEOC Charge Information Form, Def.'s Ex. 9. This may be so, but it does not address the reason for Mathews' termination: three violations of Giant's policy regarding absence notification.[4]

■ Mathews has also failed to show that white employees that repeatedly violated the absence notification guidelines or similar policies were not terminated. Mathews has named a number of white employees whom he believes were similarly situated and were not terminated.[5] From an examination of the affidavits in the record, it appears that employees named Schmidt, Hoile, Warner, Blanford and "Moonchicken" possibly had attendance problems. *See generally* Flint, Figueroa, Gamble, Hines and Wedge Affs. However, these affidavits, besides being primarily hearsay and speculation, contain only general statements regarding these individuals' behavior that do not meet Mathews' burden of establishing that these Caucasian employees also repeatedly violated Giant policies, that Giant policies required the employees' termination and that the employees were not terminated. *See Evans v. Techs. Applications & Serv. Co.,*

---

4. There is a possible tension between Giant's Absence Notification Guidelines and Article 18(e) of the warehouseman's union contract which requires employees to notify Giant of an illness that requires the use of sick leave on the first "day of absence, unless illness is of such nature that employee is rendered incapable of compliance with this requirement." *See* Agreement Between Giant Food Inc. and Warehouse Employees Local Union No. 730 November 13, 1994 Through November 8, 1997, Def.'s Ex. 1. Article 24.1 of the union contract also states that "[t]he employee shall see that the Employer is notified of his inability to report for work as near his starting time as possible on his first (1st) day of absence." However, pursuant to Article 27 of the union contract, any disputes that arise regarding the terms of the contract must be resolved through a written grievance and arbitration.

5. Mathews argues that some white employees were not disciplined at all, while others were given a "Last Chance Letter," which he was denied. I consider both types of employees mentioned by Mathews.

80 F.3d 954, 962 (4th Cir.1996) (holding that affidavits that are conclusory and based on hearsay can not be used to oppose motion for summary judgment). Therefore, Mathews has failed to establish the fourth element of the prima facie case of discriminatory discharge.

A separate order is attached.

### ORDER

For the reasons stated in the accompanying Opinion and in the related Opinion in the case of *Carson v. Giant Food, Inc.*, JFM–96–2882, it is, this 20th day of February 2000

ORDERED

1. Defendants' motions for summary judgment against Plaintiff on all causes of action in Plaintiff's complaint are Granted; and

2. Judgment is hereby entered in favor of the Defendants.