Martin FAIRCLOUGH

v.

## BOARD OF COUNTY COMMISSIONERS OF ST. MARY'S COUNTY, MARYLAND

No. CIV.A.DKC 2001–4012.

United States District Court, D. Maryland.

Feb. 4, 2003.

court on remand.

582

Joe C. Ashworth, Law Office, Leonard-town, MD, for Martin Fairclough.

Daniel Karp, Allen Karpinski, Bryant and Karp PA, Baltimore, MD, for Board of County Com'rs of St. Mary's County, MD.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination and breach of contract case are (1) Defendant's motion to dismiss the complaint or, in the alternative, for summary judgment and (2) Plaintiff's motion under FED.R.CIV.P. 56(f) for an order denying Defendant's motion for summary judgment or, in the alternative, for a continuance on a ruling on that motion pending discovery. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, Plaintiff's motion will be denied in part and granted in part, and Defendant's motion will be denied in part and granted in part.

## I. Background

The following facts are uncontroverted or set forth in the light most favorable to Plaintiff. Plaintiff Martin Fairclough, a white, Jewish male, was employed by Defendant Board of County Commissioners of St. Mary's County, Maryland ("Defendant" or "the Board") as its Director of Economic and Community Development from June 1996 to January 9, 2001. Plaintiff's supervisor was the County Administrator, who is responsible for the daily operations of the St. Mary's County Government and is supervised by the Board.

In January 2000, Alfred Lacer ("Lacer") was appointed County Administrator and became Plaintiff's immediate supervisor. In June 2000, Plaintiff entered into a new employment contract with the Board effective from June 3, 2000 to June 2, 2002.

In the spring of 2000, Plaintiff was invited by the United States Navy to take a business development trip to the Farnborough Air Show in England. The Navy's principal aircraft research and design facility is located at Patuxent River Naval Air Station in St. Mary's County, and Plaintiff had been involved in acting as a liaison between the public and private sectors. Plaintiff informed Lacer of the nature and benefits of the trip and the fact that the trip would not be financed through County funds, but, as of June 2000, Lacer had not approved the trip. On June 23, 2000, about three days before Plaintiff was supposed to leave for the trip, he went to Lacer's office to discuss the trip, and Lacer told him he had decided to refuse permission for the trip. Plaintiff tried to persuade Lacer to reconsider his decision, emphasizing that the County would not be paying for the trip and that it was an important opportunity for the County's economic development. When Lacer refused to reconsider, Plaintiff told Lacer that "I am assuming you have no confidence in my abilities to implement economic development programs and assume you are seeking my resignation." Paper no. 10 at 7. Lacer then allegedly leapt from behind his desk, shouted "that's what I would expect from a Jew!" and ushered Plaintiff out of his office. Id.; Paper no. 1, ¶ 19.

Plaintiff claims that the same day Lacer allegedly made the remark, the County's Director of Human Resources, Melvin McClintock ("McClintock") came into his office, and Plaintiff told him that he had had an experience with Lacer that he did not know how to handle. He claims that he did not tell McClintock exactly what had happened, but instead told him that it was analogous to saying "that is what I would expect from a black person." After the alleged June 23rd incident, Plaintiff met with several colleagues, including Lacer's former law partner, who is Jewish, to seek guidance on how to handle the situation. In August 2000, Plaintiff told Board President Julie Randall ("Randall") about the slur allegedly uttered by Lacer and that Lacer refused to meet with Plaintiff or respond to his e-mails. Soon thereafter, McClintock told Plaintiff that an incident had been reported (which Plaintiff did not understand because he thought he had reported it the day it occurred) and asked whether Plaintiff wanted to file a formal or informal grievance. Plaintiff then told McClintock again what had happened in Lacer's office on June 23rd. Plaintiff did not file any grievance or charge regarding the alleged remark. On August 22, 2000, Randall went to Plaintiff's home and discussed the alleged incident involving the slur for several hours. Randall allegedly told Plaintiff that the Board wanted the matter to "go away." Paper no. 1, ¶ 26.

Plaintiff alleges that after the alleged incident of June 23, 2000, Lacer began to criticize Plaintiff's actions and critiqued his efforts in recruiting a new deputy director for his department. Lacer also sent Plaintiff a memorandum about his non-compliance in submitting an ethics disclosure statement even though Plaintiff had already submitted the form. On October 10, 2000, Plaintiff was informed by McClintock that the County had conducted an investigation and concluded that no inappropriate comments had been made to him. Lacer continued to refuse to respond to Plaintiff's attempts at communication, jeopardizing many of the projects in which Plaintiff was involved on behalf of St. Mary's County. On November 21, 2000, Lacer chastised Plaintiff for his alleged absences

from department head meetings, which Plaintiff claims were justified and/or had been approved.

On November 27, 2000, Plaintiff sent Lacer an e-mail stating that "I will be submitting my resignation from county government (you win) unless I am allowed to meet with the Board of County Commissioners in Executive Session in the very near future." Paper no. 1, ¶ 32. Neither Lacer nor the Board responded to the e-mail. Plaintiff was scheduled to embark on a business trip in early January 2001. Plaintiff had heard rumors that Lacer intended to "take him out" while he was away on the business trip. On January 7, 2001, Plaintiff spoke with Randall, and she assured him that his job was safe, that no discussions about the problems between him and Lacer would occur while he was away and that he should go on the business trip. Plaintiff left for the trip on January 8, and on January 9, the Board voted not to grant Plaintiff an Executive Session and to accept Plaintiff's "resignation." Defendant did not notify Plaintiff of this action; rather, Plaintiff learned of it through a third party. When he returned to Maryland, he found that he had been locked out of his office and shut out from his e-mail account, and that his medical insurance had been cancelled. Plaintiff claims that he did not resign, but rather that he was fired.

On or about May 2, 2001, Plaintiff filed a charge of discrimination with the EEOC, and he received a right-to-sue letter on September 25, 2001. He filed this suit on December 21, 2001 alleging three counts: (1) that Defendant unlawfully retaliated against him for engaging in protected EEO activity; (2) that Defendant unlawfully discriminated against him; and (3) that Defendant breached his employment agreement by terminating his employment on January 9, 2001. Defendant filed a motion to dismiss all counts pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment.

## II. Standard of Review

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enters. Ltd. v. Air-A-Plane Corp.*, 128 F.3d 855, 860 (4th Cir.1997). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of

any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of

proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

### A. Motion to Dismiss

■ Plaintiff has alleged facts that, if true, would state a claim for all three counts. With respect to his intentional discrimination claim, Plaintiff has alleged

that Defendant discriminated against him by terminating him based on his religion. *See* Paper no. 1, ¶¶ 44, 47. With respect to his retaliation claim, Plaintiff has alleged that he engaged in activity protected by Title VII when he reported Lacer's alleged remark to McClintock and some Board members, and that he was subjected to adverse employment actions (harassment and termination) as a result. *See id.,* ¶¶ 20, 25,26,28,45,48; *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001); *Munday v. Waste Management of North Am., Inc.,* 126 F.3d 239, 242 (4th Cir.1997). Plaintiff has also alleged that he had an employment contract, that he performed his duties under the contract and that Defendant breached it by terminating him without cause. *See* Paper no. 1, ¶¶ 10,13,-39,42. Because Plaintiff has stated a claim upon which relief can be granted, the motion to dismiss the complaint will be denied. Defendant, however, has moved in the alternative for summary judgment as to all three counts.

## B. Motion for Summary Judgment

### 1. Counts 1 (Retaliation) and 3 (Breach of Contract)

Summary judgment may only be granted after the nonmoving party has had "adequate time for discovery." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Plaintiff has filed an affidavit under FED.R.CIV.P. 56(f) opposing summary judgment on the grounds that he is in need of discovery in order for him to develop fully his opposition. *See* Paper no. 9, ex. 1, ¶¶ 3–7. Rule 56(f) states that

> [s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Fourth Circuit has held that the party opposing summary judgment is required to "focus our attention on an affidavit ... that particularly specifies legitimate needs for further discovery." *Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir.1995); *Morrow v. Farrell,* 187 F.Supp.2d 548, 551 (D.Md.2002). In the instant case, Plaintiff's 56(f) affidavit sets forth specific items which he asserts are necessary for him to obtain in order to justify his opposition, including his calendar, materials relating to department head meetings, agendas and minutes of Board meetings, notes and documents kept by Board members regarding Plaintiff, records of the Department of Economic and Community Development during the time Plaintiff served as director, and depositions of Lacer, McClintock and Board members, among others. These items may have some bearing on Plaintiff's actual job performance, the circumstances surrounding Plaintiff's alleged "termination," and a potential causal link between the alleged protected activity and the alleged adverse employment actions. In his reply to Defendant's opposition, Plaintiff explains that he is seeking to discover evidence necessary to establish the pretextual nature of the explanation given by Defendant for his alleged termination. *See* Paper no. 15. These materials are essential to Plaintiff's ability to oppose the summary judgment motion, and Plaintiff is therefore entitled to "adequate time for discovery." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Accordingly, the motion for summary judgment will be denied without prejudice as to Counts 1 and 3 so that discovery may take place.

### 2. Count 2 (Intentional Discrimination)

Plaintiff alleges that Defendant intentionally discriminated against him

based on his religion in violation of § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, by terminating him from his job because he is Jewish. In its motion for summary judgment, Defendant provides a lengthy analysis challenging this count. In his opposition motion, Plaintiff does not address that portion of Defendant's motion, leading Defendant to conclude that Plaintiff has abandoned his claim of intentional discrimination. *See* Paper no. 10, 13. While Plaintiff's failure to address Count 2 may not be a concession, for the following reasons, the court will grant summary judgment in favor of Defendant on that count.

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606–07 (4th Cir.1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)). In order to overcome a summary judgment motion based upon this method of proof, the plaintiff " 'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.' " *Id.* (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988)). More specifically, the plaintiff must provide " 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.' " *Id.* (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.

1995)). If such evidence is lacking, the plaintiff may nevertheless proceed under *McDonnell Douglas*. *See Tuck*, 973 F.2d at 374.

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The plaintiff must then " 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Id.*

In this case, Plaintiff alleges that during a meeting in Lacer's office on June 23, 2000, Lacer yelled "that's what I would expect from a Jew!" and that Plaintiff was terminated by the Board on January 9, 2001. *See* Paper no. 1, ¶¶ 19,39. "Derogatory remarks may constitute direct evidence of a discriminatory attitude in the workplace." *Hill v. Lockheed Martin Logistics Management, Inc.*, 314 F.3d 657, 665 (4th Cir.2003). "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and 'unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination].' " *Brinkley*, 180 F.3d at 608 (citation omitted). This court has held that there must be a "nexus between the offensive remark and plaintiff's eventual termination for that remark to comprise direct evidence of discriminatory dis-

charge." *Eruanga v. Grafton School, Inc.*, 181 F.Supp.2d 514, 521 (D.Md.2002).

It is possible that Lacer's remark, though its intended meaning is not entirely clear, constitutes direct evidence of Lacer's discriminatory animus toward members of the Jewish religion in general and Plaintiff in particular. However, the remark appears to be an isolated event; the record reflects that Lacer uttered it only once. Moreover, there was no nexus between the alleged discriminatory remark and the alleged employment action. The temporal proximity between the alleged derogatory remark and Plaintiff's alleged termination—six months—suggests there is no connection between the two. More importantly, the person who allegedly uttered the remark (Lacer) is not one of the individuals who made the decision to terminate Plaintiff; it is the Board that voted to accept Plaintiff's "resignation." Although a very recent Fourth Circuit opinion concluded that the discriminatory animus of a subordinate of the formal decisionmaker may constitute direct evidence of discrimination, that conclusion only applies when the subordinate has a "substantial influence on the employment decision." *Hill*, 314 F.3d at 670. Unlike the subordinate in *Hill*, there is no evidence in the record to support the inference that Lacer had a substantial influence on the decision to "terminate" Plaintiff or that the Board was merely a rubber stamp for Lacer. *See id.* at 670–72. Because there is no direct evidence of discrimination by the Board with regard to an employment decision, Plaintiff cannot succeed using this method.

 Plaintiff is similarly unsuccessful under the burden-shifting *McDonnell Douglas* scheme. In order to establish a *prima facie* case of discriminatory discharge, a plaintiff must prove the following four elements: (1) that he is a member of a protected class; (2) that he was qualified for his job and his job performance was satisfactory; (3) that he was fired; and (4) that other employees who are not members of the protected class were retained under similar circumstances. *See Mathews v. Giant Food, Inc.*, 187 F.Supp.2d 486, 488 (D.Md.2002) (quoting *Porter v. National Con-Serv, Inc.*, 51 F.Supp.2d 656, 659 (D.Md.1998) (citing *Hughes v. Bedsole*, 48 F.3d 1376,1383 (4th Cir.1995))). Defendant asserts that Plaintiff cannot satisfy the second, third or fourth elements of the *prima facie* case. The court need not address the second and third prongs because it is clear that Plaintiff has not satisfied the fourth prong, and, therefore, has not made out a *prima facie* case of discrimination. Plaintiff has failed to show that similarly situated, non-Jewish employees who failed to attend numerous department head meetings or engaged in other acts similar to the alleged behavior of Plaintiff were not terminated. *See, e.g., Mathews*, 187 F.Supp.2d at 489 (holding that terminated employee failed to establish *prima facie* case of race discrimination because he "failed to show that white employees that repeatedly violated the absence notification guidelines or similar policies were not terminated.") Plaintiff's 56(f) affidavit makes no specific mention of a need for discovery of information pertaining to similarly situated employees, nor does it seem likely that the items sought in the affidavit would uncover evidence pertinent to this prong. *Nguyen*, 44 F.3d at 242. Therefore, because discovery with regard to this prong is unlikely to uncover anything "essential to justify the [plaintiff's] opposition," summary judgment is appropriate. *See* Fed.R.Civ.P. 56(f). Defendant's motion for summary judgment will be granted as to Count 2.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to defer consideration of summary

judgment until discovery has occurred will be granted as to Counts 1 and 3 and denied as to Count 2. Defendant's motion for summary judgment will be granted as to Count 2 and denied without prejudice as to Counts 1 and 3. A separate Order will be entered.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 4th day of February, 2003, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff's motion to defer consideration of summary judgment until discovery has occurred BE, and the same hereby IS, GRANTED as to Counts 1 (Retaliation) and 3 (Breach of Contract) and DENIED as to Count 2 (Intentional Discrimination);

2. Defendant's motion for summary judgment BE, and the same hereby IS, GRANTED as to Count 2 (Intentional Discrimination) and DENIED WITHOUT PREJUDICE as to Counts 1 (Retaliation) and 3 (Breach of Contract);

3. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendant Board of County Commissioners of St. Mary's County, Maryland and against Plaintiff Martin Fairclough with respect to Count 2 (Intentional Discrimination); and

4. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties.